UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

==================================================

JEFFREY MALKAN,

                          Plaintiff,

          v.                                    **DECISION AND ORDER**
                                                12-CV-236-A

MAKAU W. MUTUA and
CHARLES P. EWING,

                    Defendants.

==================================================

          Plaintiff Jeffrey Malkan brings this action pursuant to 42 U.S.C. § 1983

alleging that defendants Makau W. Mutua and Charles P. Ewing deprived him of

property without due process of law in violation of the Fourteenth Amendment to

the United States Constitution.  U.S. Const. XIV.  Plaintiff Malkan was a Clinical

Professor at the State University of New York at Buffalo Law School.  Defendant

Mutua is the Dean of the Law School.  Defendant Ewing is the chair of the faculty

Grievance Committee of the Law School.

          In his complaint, plaintiff Malkan alleges that defendant Mutua wrongfully

terminated the plaintiff's contract as a Clinical Professor on the faculty of the Law

School.  The plaintiff alleges that defendants Mutua and Ewing intentionally

violated his due process rights to pre-termination and post-termination faculty

consultation and review of defendant Mutua's termination of the contract.

Defendants Mutua and Ewing have moved to stay this action until a breach of contract action that plaintiff Malkan filed against the State University of New York in the New York State Court of Claims is resolved.  The defendants argue that the two cases are duplicative and wasteful.

Defendants Mutua and Ewing have also moved pursuant to Fed. R. Civ. P. 12(b) partially to dismiss plaintiff Malkan's claims.  The defendants do not seek dismissal of the due process cause of action in the complaint, and only challenge some remedies sought by the plaintiff.  They argue that the remedies are either beyond the Court's subject-matter jurisdiction or are unwarranted by the facts alleged in the complaint.  For the reasons stated below, the defendants' motions are denied.

## BACKGROUND[1]

The plaintiff, Jeffrey Malkan, joined the faculty of the State University of New York at Buffalo Law School in June, 2000 as a Clinical Associate Professor and as Director of the Legal Research and Writing Program.  On April 28, 2006, plaintiff Malkan was promoted by the dean at the time, R. Nils Olsen, upon the recommendation of the faculty Promotion and Tenure Committee, to the position of Clinical Professor.

Plaintiff Malkan executed an employment contract for the position of

---

[1]  When addressing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the Court assumes the well-pleaded allegations in a complaint are true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Clinical Professor on November 16, 2006.  The contract provided for a three-year term of employment, followed by a "mandatory" two-year "administrative extension" to be made at the end of the three-year term.  The contract provided that, while American Bar Association ("ABA") accreditation standards required accredited law schools to grant five-year contracts to full professors of the plaintiff's rank, State University of New York ("SUNY") policies, by which the Law School was bound, permitted only three-year contracts.  The contract nevertheless provided that it was a "five-year contract," and characterized the two-year extension necessary to make it a five-year contract as "routine[]" and "automatic."  It specifically promised that "the Dean will extend your contract for 2-years, or from 9/1/2009-8/31/2011, to provide the 5-year contract term mandated by the ABA."

The November 16, 2006 contract also provided that plaintiff Malkan's appointment as a Clinical Professor could only be terminated "for good cause" in accordance with ABA accreditation standards.  It specifically promised:

> A change in the structure or staffing of the law school's research and writing program will not equate with "for good cause" to terminate or not renew your contract since your contract as a Clinical Professor is separate from your administrative appointment as Director of Research and Writing. Should your appointment as Director of Research and Writing end, you would still maintain your position as Clinical Professor.

Dkt. No. 12-1, p. 23.

3

On March 13, 2008, shortly after being appointed interim Dean of the Law School, defendant Makau W. Mutua dismissed plaintiff Malkan as Director of the Legal Research and Writing Program, effective March 14, 2008.  The plaintiff's dismissal was ostensibly in connection with termination of the existing Legal Research and Writing Program.  Defendant Mutua refused repeated attempts by the plaintiff to discuss the plaintiff's termination as Director of the Legal Research and Writing Program.  The plaintiff continued teaching as a Clinical Professor.

However, six months later, on August 28, 2008, defendant Mutua, who was appointed Dean of the Law School in May, 2008, notified plaintiff Malkan by letter that the plaintiff's contract as a Clinical Professor would expire at the end of the next academic year and that the contract would not be renewed.  Defendant Mutua stated in the letter that under ABA Standard 405, an instructor was subject to termination upon  "termination or material modification"  of the clinical program, and that the termination of the Legal Research and Writing program at the Law School met the requirements of Standard 405.

Plaintiff Malkan asked to meet with defendant Mutua about his termination, but defendant Mutua refused.  Defendant Mutua later refused similar requests.

In January of 2009, plaintiff Malkan filed a protest with the faculty Grievance Committee of the Law School, which was chaired by defendant Charles P. Ewing.  The protest was on the ground that defendant Mutua had refused to consult with the Law School faculty Committee on Clinical Promotion

and Renewal ("CCPR") regarding the plaintiff's reappointment as a Clinical Professor.  The plaintiff asserted that defendant Mutua lacked authority to terminate the plaintiff's appointment as a Clinical Professor for cause without consulting with and receiving a recommendation from the CCPR.  Defendant Mutua refused to consult with the CCPR.

Defendant Mutua also refused to participate in the faculty Grievance Committee's attempts to address plaintiff Malkan's protest that defendant Mutua was terminating the plaintiff without consultation with the CCPR and without a recommendation by the CCPR.  Defendant Ewing, as chair of the Grievance Committee, orally acknowledged that the protest was within the Grievance Committee's jurisdiction.  As chair of the Grievance Committee, defendant Ewing spoke to defendant Mutua about the plaintiff's termination and protest to the Grievance Committee, but defendant Mutua refused to address the protest through the Grievance Committee.  The plaintiff requested that defendant Ewing report the plaintiff's unaddressed Grievance Committee protest to the Law School faculty, as defendant Ewing was required to do as chair of the Grievance Committee, but defendant Ewing refused to do so.

The CCPR convened for its only meeting of the 2008-2009 academic year on April 21, 2009, to discuss the reappointment of two other Law School clinical professors with contracts that were to expire on August 31, 2009.  Defendant Mutua refused to allow the CCPR to hear recommendations or to vote on plaintiff

Malkan's reappointment.  The Grievance Committee did not address the plaintiff's protest after the April 21, 2009 CCPR meeting.  On September 1, 2009, the plaintiff's appointment as Clinical Professor terminated, ending his employment relationship with the Law School.

In January of 2009, plaintiff Malkan brought an action against SUNY in the New York State Court of Claims for breach of his employment contract.  The plaintiff alleged in the Court of Claims that, by terminating him as a Clinical Professor before the expiration of the five-year term of his contract, SUNY breached the terms of the contract as agreed to on November 16, 2006.  The plaintiff seeks damages from SUNY in the state court action, including past and future lost pay.

SUNY has answered in the New York State Court of Claims that plaintiff Malkan lacked an employment contract extending beyond the initial three-year term that he served.  SUNY alleges that, no matter what ABA accreditation standards may require, the former dean of the Law School lacked authority to enter into a contract with the plaintiff to extend the initial three-year term of the contract by an "automatic" and "routine" two-year extension.  The Court of Claims action is still in pre-trial discovery.

## DISCUSSION

**I. Entry of a Stay.**  Defendants Mutua and Ewing move pursuant to the

Court's inherent authority to stay this action until resolution of plaintiff Malkan's

breach of contact action against SUNY in the New York State Court of Claims.

The defendants argue that this action is "entirely duplicative" of the Court of

Claims action and a waste of time.

The law upon which defendants Mutua and Ewing rely in support of their

motion to stay this action governs the entry of a discretionary stay where parallel

actions are pending in federal courts.  *See, e.g., Landis v. North Am. Co.*, 299

U.S. 248 (1936).  However, the defendants' motion to stay this action in favor of

an action pending in state court is necessarily governed by a different and more

strict "exceptional-circumstances" standard.  *Moses H. Cone Memorial Hospital*

*v. Mercury Construction Co.,* 460 U.S. 1, 19 (1979) (authority to stay "must be

exercised under the relevant standard."); *Burnett v. Physician's Online, Inc.,* 99

F.3d 72, 77 (2d Cir. 1996) (a "district court must balance the relevant factors in

reaching its decision.").

A motion to stay a federal court action such as this one in favor of an action

pending in state court triggers very different considerations of comity between

sovereigns and of judicial administration than those triggered by parallel federal

litigation.  It is well settled that a federal court may stay an action that is within its

subject-matter jurisdiction in favor of a parallel matter pending in a state court

7

only in truly exceptional circumstances.  *Moses H. Cone Memorial Hospital,* 460 U.S. at 23-26 (1979); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The considerations that may arguably favor a federal court's surrendering its jurisdiction to a parallel state court action by staying the federal action must far outweigh a federal court's  "virtually unflagging obligation" to exercise its subject-matter jurisdiction.  *Colorado River*, 424 U.S. at 813, 817; *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (six-factor standard for entry of a stay of a federal action in favor of a state court action).

Moreover, as a threshold matter, a stay of this federal action can be entered only if this action is genuinely parallel to plaintiff Malkan's New York State Court of Claims action.  *Colorado River,* 424 U.S. at 818; *Dittmer v. Cnty. of Suffolk,* 146 F.3d 113, 118 (2d Cir.1998).  "For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." *Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms,* 466 F.3d 88, 94 (2d Cir. 2006) (*citing Dittmer,* 146 F.3d at 118).

Defendants Mutua and Ewing argue that this action and plaintiff Malkan's New York Court of Claims action are  "entirely duplicative."  The defendants overlook some substantial differences, however.

Key issues in both the federal civil rights action and state breach of

contract action will depend upon the construction of plaintiff Malkan's employment contract.  The state law reading of the contract's duration will obviously be a critical factor in assessing the extent of the plaintiff's property interest in continued employment with the State — an essential predicate for this action — but it will not be dispositive.

When considering whether plaintiff Malkan's employment contract gave him a property interest in continuing employment with the State sufficient to merit due process protection, this Court will look both to the express terms of the contract, and to the underlying policies and  "unwritten common law" applicable to the faculty appointment.  *See Perry v. Snyderman*, 408 U.S. 593, 601-02 (1972); *Bishop v. Wood,* 426 U.S. 341, 344 (1976).  The Court will assess evidence of the relevant employment policies and practices of the Law School and SUNY, including, among other evidence, the plaintiff's November 16, 2006 contract promising the plaintiff that:  (1)  "the Dean will extend your contract for 2-years, or from 9/1/2009-8/31/2011, to provide the 5-year contract term mandated by the ABA"; and, (2)  "[s]hould your appointment as Director of Research and Writing end, you would still maintain your position as Clinical Professor."  In light of such evidence, a ruling against the plaintiff on his state law breach of contract claim in the New York State Court of Claims would not necessarily preclude a finding by this Court of a viable property interest in the plaintiff's continued employment with the State.

9

When defendants Mutua and Ewing argue that this action is entirely duplicative of the state action, they also overlook that the due process questions at the core of plaintiff Malkan's civil rights claim are unique to this action. Assuming that the plaintiff had a property interest in his continued employment with the State that was subject to due process protection, the questions concerning what process he was actually due are unique to this action. *See Shakur v. Selsky,* 391 F.3d 106, 118 (2d Cir. 2004).  There will be witnesses and documentary evidence relevant to the property interest and due process issues in this federal civil rights action that will not be relevant to the state law breach of contract issues in the Court of Claims action.

The Second Circuit has held that the existence of related and overlapping subject matter with a state proceeding is insufficient to permit entry of a stay. *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988) (state action involving adequacy of insurance rates was insufficiently similar to federal action attacking constitutionality of related state medical malpractice statutes to justify a stay).  In light of the federal questions that are unique to this case and which stand to be resolved here regardless of the outcome of the plaintiff Malkan's New York State Court of Claims action against SUNY, the overlapping issues in this case and the plaintiff's state case are not  "substantially the same"  so as to permit consideration of a stay.  *See Royal and Sun Alliance Ins. Co. of Canada,* 466 F.3d at 94.

10

In addition, the Second Circuit has held in this context that "[s]imilarity of parties is not the same as identity of parties." *Alliance of Am. Insurers v. Cuomo*, 854 F.2d at 603. (stay inappropriate where the plaintiff in two pending state cases — the New York Medical Malpractice Insurance Association — was an unincorporated association that included the federal plaintiff — the Alliance of American Insurers). Defendants Mutua and Ewing are not parties to the New York State Court of Claims proceeding. While the defendants are in privity with SUNY for some purposes, and may have some interests aligned with those of SUNY in the Court of Claims proceeding, the university is distinct from the defendants, who are sued here in their individual capacities and face personal liability without the protection of the State's sovereign immunity. "[S]uch differences in parties and issues are strong factors against invoking exceptional circumstances . . ." to justify a stay. *Alliance of Am. Insurers v. Cuomo*, 854 F.2d at 603; *see Burnett,* 99 F.3d at 77. The Court finds that the parties in the state action are not "substantially the same" as the parties in this action. *See Royal and Sun Alliance Ins. Co. of Canada,* 466 F.3d at 94.

Based upon the substantial differences in this federal civil rights case and plaintiff Malkan's Court of Claims breach of contract case, the argument of defendants Mutua and Ewing that the two actions are "entirely duplicative" is without merit. The two actions are not genuinely parallel. The Court finds that the defendants fail even to make the preliminary, threshold showing that is

11

necessary to warrant the Court's consideration of the defendants' exceptional-circumstances motion for a stay.  The defendants' motion for a stay is denied.

**II.  Motions to Dismiss.**  Defendants Mutua and Ewing move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss some remedies sought by plaintiff Malkan against the defendants in their official capacities — including reinstatement and the clearing of the plaintiff's personnel record of evidence of his termination — as barred by New York state's sovereign immunity and the Eleventh Amendment. U.S. Const. Amend. XI.  A claim is properly dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1)  "when the district court lacks the statutory or constitutional power to adjudicate it."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir.2008).

Defendants Mutua and Ewing move to dismiss plaintiff Malkan's claims for compensatory and punitive damages  "to the extent"  that they are asserted against the defendants in their official capacities.  The plaintiff's complaint does not on its face seek compensatory or punitive damages from the defendants in their official capacities.  The plaintiff's response to the defendants' motions to dismiss confirms that the plaintiff is not seeking to recover compensatory or punitive damages from the defendants in their official capacities.  The defendants' motions to dismiss those remedies are denied as moot.

For the reasons that follow, the Court also denies the defendants' remaining motions to dismiss.  However, the Court dismisses, *sua sponte*, the

12

plaintiff's equitable pay claim as beyond the Court's subject-matter jurisdiction.

In general, the Eleventh Amendment protects state officials from civil suits for actions taken in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, pursuant to the U.S. Supreme Court's decision in *Ex parte Young,* a state official may be sued in his official capacity to enjoin an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123 (1980). As the Supreme Court has explained, where a state official seeks to enforce an allegedly unconstitutional act or acts in violation of the federal rights of others, "the state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* at 159-160.

In determining whether a suit against a state official falls within the *Ex parte Young* exception to state sovereign immunity, the necessary inquiry focuses on the nature of the relief sought. *See Edelman v. Jordan*, 415 U.S. 651 (1974). Under *Ex parte Young*, a federal court is only permitted to grant injunctive relief against future violations of federal law. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law"). The Supreme Court has declined to extend the reasoning of *Ex parte Young* to claims for relief that are retrospective. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102 (1984). When a plaintiff seeks relief in the form of retroactive or compensatory damages as a remedy for a past injury,

13

and the damages would be paid from a state treasury, the suit is barred by the

Eleventh Amendment.  *See Edelman v. Jordan*, 415 U.S. 651, 667 (1974) (a suit

"seeking to impose a liability which must be paid from public funds in the state

treasury is barred by the Eleventh Amendment").

The Supreme Court has acknowledged that its prospective-retrospective

distinction — the dividing line between relief permitted under *Ex parte Young* and

that barred by the Eleventh Amendment — "will not in many instances be [as

distinct as] that between day and night."  *Edelman*, 415 U.S. at 667.  While the

prospective-retrospective distinction can be difficult to apply, a central principle is

well established:  where the effect on a state treasury is only  "ancillary"  to a

grant of prospective relief, the Eleventh Amendment does not bar the relief.  *See*

*Edelman*, 415 U.S. at 667.  Fiscal consequences are often a necessary result of

state compliance with injunctive relief permitted under *Ex Parte Young,*  and their

existence is not an absolute bar to entry of such relief against a state official.

*See, e.g., In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367 (2d Cir. 2005)

(injunctive relief requiring state officials to accept plaintiff's claims for

reimbursement from a state environmental assurance fund).

A.  **Official-Capacity Claim for Reinstatement.**  Employment

reinstatement has been recognized by the Second Circuit as a prospective form

of injunctive relief permitted under the *Ex parte Young* exception to a state's

sovereign immunity.  *See Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985), *modified*

*on other grounds,* 793 F.2d 457 (2d Cir. 1986).  In *Dwyer*, a state employee

brought an action pursuant to 42 U.S.C. §1983 against a state agency, alleging

that he had been deprived of a property interest in continued employment without

due process of law.  The Second Circuit held on appeal that "reinstatement is

purely prospective injunctive relief that orders the state official to return the former

employee to the state's payroll," and that reinstatement is permissible under *Ex

parte Young.  Dwyer* at 836.  This reasoning has been followed repeatedly.  *See,

e.g., Dotson v. Griesa*, 398 F.3d 156, (2d Cir. 2005); *Russell v. Dunston*, 896

F.2d 664 (2d Cir. 1990).  Plaintiff Malkan's claim for reinstatement to the position

of Clinical Professor is therefore not barred by the Eleventh Amendment and the

defendants' motion to dismiss the claim for that remedy is denied.

Defendants Mutua and Ewing overlook Second Circuit precedent that

reinstatement can be permissible under *Ex Parte Young.*  Instead, the defendants

argue that because an order of reinstatement would be "intended to remedy an

alleged past violation," it is "clearly retrospective."  But the mere existence of a

past harm does not "render an otherwise forward-looking injunction retroactive."

*Russell*, 896 F.2d at 668.  The need for prospective relief often arises out of an

injury inflicted in the past.  The holding of *Ex parte Young* would mean nothing if

relief relating to past injuries were barred.  *Id*.

Defendants Mutua and Ewing also contend that because reinstatement of

plaintiff Malkan would have an effect on the state treasury, it must be barred by

the Eleventh Amendment.  However, under the prospective-retrospective

distinction articulated in *Edelman*, "sovereign immunity is not invoked simply

because prospective injunctive relief ultimately results in a diminution of state

funds."  *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 375.  In cases

where effects on the state treasury are ancillary to an order of prospective relief

permitted under *Ex parte Young*, the Eleventh Amendment does not bar that

relief.  In this case, while plaintiff Malkan's reinstatement would necessarily

require the expenditure of state funds, it appears that the expenditure would be

an ancillary consequence of permissible prospective relief.

      **B.  <u>Official-Capacity Claim to Clear Personnel File.</u>**  The Court also finds

that plaintiff Malkan's claim for  "the clearing of his personnel file of any wrongful

disciplinary actions"  is similarly permitted under *Ex parte Young*.  The existence

of derogatory information in the plaintiff's personnel file, if found to be the result of

a violation of due process, would be an ongoing violation of federal law.  Even

though removal of such information is arguably remedial, the Court finds the

remedy may be entered to compel state officials to prospectively bring their

actions into compliance with federal law to prevent future harm.

      In *Elliot v. Hinds*, 786 F.2d 298 (7th Cir.1986), the Seventh Circuit Court of

Appeals found a former state employee's similar claim requesting that his

personnel file be cleared of derogatory material to be purely prospective

injunctive relief.  *Id. at* 302.  As the Seventh Circuit held,  "the removal of

damaging information from the plaintiff's work record is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements." *Id.* Other Circuit Courts have ruled similarly, finding the removal of derogatory information from a plaintiff's state personnel file to be permitted under *Ex parte Young*. *See, e.g., Williams v. Kentucky,* 24 F.3d 1526 (6th Cir. 1994) (expungement of all references relating to demotion was prospective); *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) (state university student's prayer for injunctive relief clearing his school record of past violations was prospective). The Court finds this reasoning to be correct. Clearing plaintiff Malkan's personnel file of references to an unlawful termination would be directed toward preventing future violations of the plaintiff's federal civil rights. It therefore is prospective relief consistent with *Ex parte Young,* and is not barred by the Eleventh Amendment.

### C.  Official-Capacity Claim for an Equitable Award of Pay.  Plaintiff

Malkan also seeks equitable relief in the form of back pay and front pay. Because these forms of relief would impose a monetary liability directly on the state treasury, they are barred by the doctrine of sovereign immunity and the Eleventh Amendment to the United States Constitution. U.S. Const. Amend XI.[2]

---

[2]  Defendants Mutua and Ewing have not challenged the equitable claims in the plaintiff's complaint for back pay and front pay. Because that relief would be available from the defendants, if at all, only in their official capacities, it is beyond the subject-matter jurisdiction of the Court and is therefore addressed *sua sponte* pursuant to Fed. R. Civ. P. 12(h)(3).

A claim for back pay seeks "the payment of . . . money which should have been paid, but was not." *Edelman*, 415 U.S. at 664.   Such an award would necessarily require the payment of funds from the state treasury to remedy a past injury.  Applying this distinction, the Second Circuit has found a demand for back pay in a suit against a state officer to be barred by the Eleventh Amendment. *Dwyer v. Regan*, 777 F.2d 825, 835 (2d Cir. 1985).  Plaintiff's claim for back pay is likewise therefore barred.

An award of front pay is similarly within the scope of the Eleventh Amendment.  While front pay is generally available in other contexts as an alternative to reinstatement, were it to be awarded in this suit against state actors, it would impose monetary liability on the state.  *See Campbell v. Arkansas Dept. of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998) ("For purposes of the Eleventh Amendment, front pay is not analogous to the prospective relief permitted under *Ex parte Young* because it  must be paid from public funds in the state treasury".); *Blanciak v. Allegheny Ludlum Corp*., 77 F.3d 690, 698 (3d Cir. 1996) (front pay is equivalent to  "compensatory damages which would have to be paid from the state," and is barred by the Eleventh Amendment); *Freeman v. Michigan Dept. of State*, 808 F.2d 1174, 1179 (6th Cir. 1987).  Although the Second Circuit does not seem to have ruled on this specific issue, the Court finds that front pay is unavailable as an alternative to reinstatement in an official-capacity suit against a state official where it will be paid from a state treasury.

**D.  Individual-Capacity Claim for Punitive Damages.**  Defendants Mutua

and Ewing have also moved pursuant to Fed. R. Civ. P. 12(b)(6)  to dismiss

plaintiff Malkan's claim for punitive damages on the ground that the complaint

fails to plead facts sufficient to support a finding of the evil intent required to

support an award of punitive damages.  In general, to survive a motion to dismiss

under Fed. R. Civ. P. 12(b)(6), a complaint must  "state a claim to relief that is

plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court generally confines its analysis of such a motion to the four corners of

the complaint.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see* Fed. R.

Civ. P. 12(d).

Punitive damages may be awarded under 42 U.S.C. § 1983 only where

"the defendant's conduct is shown to be motivated by evil motive or intent, or

when it involves reckless or callous indifference to the federally protected rights of

others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  The Second Circuit has found

punitive damages to be appropriate in cases involving wrongful termination on

prior occasions*.  See, e.g., Vasbinder v. Ambach*, 926 F.2d 1333, 1343 (2d Cir.

1991) (punitive damages warranted where New York State Department of

Education employee was discharged in violation of First Amendment).  To be

entitled to punitive damages, a plaintiff must show  "a positive element of

conscious wrongdoing."  *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538

119 (1999).

19

Plaintiff Malkan essentially complains that his procedural rights to mandatory Law School faculty review of his termination as a Clinical Professor were denied by defendant Mutua in violation of the plaintiff's Fourteenth Amendment rights to due process.  The plaintiff alleges that his termination as a Clinical Professor was in wanton breach of specific promises made in his November 16, 2006 employment contract.  The contract, upon which the plaintiff relies in the complaint, promised that  "[a] change in the structure or staffing of the Law School's research and writing program w[ould] not"  be good cause to terminate or to not renew the plaintiff's appointment as a Clinical Professor.  Nevertheless, defendant Mutua's August 28, 2008 termination letter stated that the  "good cause"  for the plaintiff's termination was the termination of the Law School's Legal Research and Writing Program.  The termination letter addressed plaintiff's termination as if the plaintiff were an instructor, not a Clinical Professor. The termination letter disposed of the promise to the plaintiff of a five-year contract as  "not permitted by SUNY."

The broken promises alleged by plaintiff Malkan are not directly relevant to the plaintiff's claim for punitive damages for violations of his rights to due process. But those allegations, along with the allegations of defendant Mutua's stonewalling of the plaintiff's various attempts to seek redress, together support a reasonable inference that defendant Mutua was determined to resist mandatory Law School faculty consultation and review of the plaintiff's termination in order to

dismiss the plaintiff from the faculty no matter what.  The complaint adequately alleges that, when defendant Mutua refused to allow the plaintiff's status to be addressed by the CCPR and refused to address the plaintiff's protest of the circumstances of the plaintiff's termination through the Grievance Committee, defendant Mutua was acting in reckless and callous disregard of the plaintiff's rights to due process.  The allegations of the complaint therefore support a claim for punitive damages against defendant Mutua.[3]

Plaintiff Malkan alleges that defendant Ewing orally admitted that the plaintiff's protest of the circumstances of his termination, including defendant Mutua's refusal to consult with the CCPR, was within the jurisdiction of the faculty Grievance Committee chaired by defendant Ewing.  The plaintiff further alleges that defendants Ewing and Mutua refused to address the plaintiff's protest after defendant Ewing spoke to defendant Mutua about the plaintiff's termination and the protest before the Grievance Committee.

After careful consideration, the Court finds it plausible that defendant Ewing's refusal as chair of the Grievance Committee to address plaintiff Malkan's protest, and his refusal to report the unaddressed protest to the faculty, was the result of defendant Mutua's refusal to cooperate with the Grievance Committee. The complaint adequately alleges that defendant Ewing's actions recklessly or

---

[3]  The Court has not considered plaintiff Malkan's argument that defendant Mutua was retaliating against the plaintiff for complaining about his termination as Director of Research and Writing in violation of the Taylor Law, N.Y. Civil Service Law § 200 *et seq.,* as is alleged in a Public Employee Relations Board proceeding, because it is not alleged in the complaint.

callously denied the plaintiff the procedural protections to which he was entitled.
Defendant Ewing's motion to dismiss the plaintiff's claim for punitive damages is
therefore also denied.

    **III.  New York Due Process.**  Defendants Mutua and Ewing fail to
challenge plaintiff Malkan's cause of action to the extent that it purports to be
stated under provisions of the New York State Constitution.  Because such a
claim is beyond the Court's subject-matter jurisdiction, it is dismissed, *sua sponte*,
pursuant to Fed. R. Civ. P. 12(h)(3).

    The New York Court of Appeals has recognized a private right of action for
violations of the state constitution, but such claims are limited to circumstances in
which no alternative remedy is available to the plaintiff.  *Brown v. State*, 89
N.Y.2d 172, 191-92 (N.Y. 1996).  Here, the plaintiff alleges a cause of action
under § 1983 and the Fourteenth Amendment to the United States Constitution.
The § 1983 remedies are adequate remedies.  There is no reason for this Court
to entertain an implied private right of action under an analogous clause of the
New York State Constitution.  *See Wahad v. F.B.I.*, 994 F.Supp. 237, 239-40
(S.D.N.Y. 1998) (no implied private right of action under New York State due
process clause where plaintiff had analogous claim under 42 U.S.C. § 1983 for
federal due process violations); *see Lyles v. State,* 194 Misc.2d 32 (N.Y. Ct. Cl.
2002), *affirmed,* 3 N.Y.3d 396 (N.Y. 2004)(adequacy of common law remedy held
by Court of Claims to preclude implied private right of action under New York

State Constitution).  To the extent plaintiff Malkan's due process claim is stated under provisions of the New York State Constitution, it is dismissed.

## CONCLUSION

For the foregoing reasons, the motion to stay this action in favor of a overlapping New York State Court of Claims action and the partial motions to dismiss pursuant to Fed. R. Civ. P. 12(b) filed by defendants Makau W. Mutua and Charles P. Ewing are all denied.  The Court dismisses *sua sponte* plaintiff Jeffrey Malkan's equitable claims against the defendants in their official capacities for front pay in lieu of reinstatement and for back pay, because the claims are barred by New York State's sovereign immunity and the Eleventh Amendment to the United States Constitution.  U.S. Const., Amend. XI.  The Court also dismisses *sua sponte* so much of plaintiff Malkan's claim as may be predicated upon an implied private right of action under the New York State Constitution.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this case is referred to a United States Magistrate Judge for the Western District of New York, to be assigned by the Clerk of the Court, for all proceedings necessary to a determination of the merits of the factual and legal issues presented by this action.  At the conclusion of such proceedings, the Magistrate Judge shall prepare and submit to this Court a Report and Recommendation containing proposed findings of fact, if appropriate, and recommendations for the disposition of any motions in this case.

23

All papers shall continue to be filed in the Clerk's office.


SO ORDERED.


_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: October 3, 2012