**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JEFFREY MALKAN,**

                      **Plaintiff,**

v.

                                                                          **12-CV-0236A(Sr)**

**MAKAU W. MUTUA, et al.,**

                      **Defendants.**

---

## **REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #22.

Currently before the Court is defendant Makau W. Mutua's motion for summary judgment. Dkt. #55. For the following reasons, it is recommended that defendant's motion be granted.

## **FACTS**

By letter dated July 25, 2000, R. Nils Olsen, Jr., Dean of the State University of New York ("SUNY") Buffalo Law School, extended to Mr. Malkan an initial appointment as a

> Clinical Associate Professor and Director of Research and
> Writing for a three-year term, with reappointment for a
> second three-year [term] during your second year. In your
> fifth year, the faculty will make reappointment for a third

> three-year term.  This process of three-year term renewals
> then continues indefinitely.

Dkt. #63-5, p.30.  Mr. Malkan accepted this appointment on August 7, 2000.  Dkt. #63-5, p.30.  The appointment was renewed for a second three-year term.  Dkt. #63-8, ¶ 24.

By letter dated October 19, 2006, Dean Olsen advised Mr. Malkan of his promotion to Clinical Professor and documented the following agreement:

> As we have discussed throughout your service to UB Law
> School, your appointment is covered by the ABA rules
> and is intended to fully comply with those rules,
> particularly standard 405(c)[1] and all accompanying
> interpretations, especially interpretations 405-6[2] and

---

[1] Section 405(c) of the ABA Standards for Approval of Law Schools provides that a "law school shall afford to full-time clinical faculty members a form of security of position reasonably similar to tenure . . . ."  Dkt. #56-20.

[2] Interpretation 405-6 provides:

> A form of security of position reasonably similar to tenure includes a separate tenure track or a program of renewable long-term contracts.  Under a separate tenure track, a full-time clinical faculty member, after a probationary period reasonably similar to that for other full time faculty, may be granted tenure.  After tenure is granted, the faculty member may be terminated only for good cause, including termination or material modification of the entire clinical program.
>
> A program of renewable long-term contracts shall provide that, after a probationary period reasonably similar to that for other full-time faculty, during which the clinical faculty member may be employed on short-term contracts, the services of a faculty member in a clinical program may be either terminated or continued by the granting of a long-term renewable contract.  For the purposes of this Interpretation, "long-term contract" means at least a five-year contract that is presumptively renewable or other arrangement sufficient to ensure academic freedom.  During the initial long-term contract or any renewal period, the contract may be terminated for good cause, including termination or material modification of the entire clinical program.

Dkt. #56-20, pp.6-7.

> 405-8.[3]  Now that you have successfully been appointed following a full review, future reviews will have the "for cause only" removal standard set forth in the ABA Standards. Under ABA policies, this standard means you may only be denied reappointment for cause such as dishonesty, failure to report to work or some other equally egregious action. The "for good cause" standard is meant to be similar to that term as applied when dealing with tenured faculty and is intended to ensure academic freedom.
>
> This is a 5-year contract, intended to comply with the relevant ABA accreditation standards.  Because current SUNY policies only provide for 3-year contract terms,[4] the Dean will provide a 2-year administrative extension at the end of every 3-year period.  The Dean for the purpose of maintaining compliance with the mandate of the law school's accrediting agency will do all such 2-year extensions routinely.  If SUNY allows the law school to grant 5-year contracts in order to comply more directly with the ABA, the automatic 2-year extensions will be discontinued and all contract renewals will be for 5-years.  The 5-year contract renewals will alternate between the Dean and the Faculty's Promotion & Tenure Committee, unless the Faculty, in the course of updating its personnel procedures for clinical professors, decides to cede its role to the Dean, in which case the Dean will do all 5-year renewals.
>
> Your current contract term as Clinical Professor extends from 9/1/2006-8/31/2009, and your current salary rate is $95,000.  At the expiration of this term, the Dean will extend

---

[3] Interpretation 405-8 provides:

> A law school shall afford to full-time clinical faculty members participation in faculty meetings, committees, and other aspects of law school governance in a manner reasonably similar to other full-time faculty members. . . .

Dkt. #56-20, p.7.

[4] SUNY policy provides that "a term appointment shall be an appointment for a specified period of not more than three years which shall automatically expire at the end of the period unless terminated earlier because of resignation, retirement or termination."  Dkt. #56-1, p.24.  "[T]erm appointments may be renewed . . . for successive periods of not more than three years each." Dkt. #56-1, p.25.  "No term appointment, of itself, shall be deemed to create any manner of legal right, interest or expectancy in any other appointment or renewal." Dkt. #56-1, p.25.

> your contract for 2-years, or from 9/1/2009-8/31/2011, to provide the 5-year contract term mandated by the ABA. The Dean will perform the first 5-year renewal of your contract in 2011-2012, followed by a second 5-year renewal, performed by the Faculty's Promotion & Tenure Committee in 2016-2017.  All subsequent 5-year renewals at the expiration of each term will alternate in this format between the Dean and the Faculty.  The renewals will incorporate all the terms of the preceding contracts and this letter unless both parties agree to new terms.  All reviews and renewals will comply with the ABA's accreditation standards, particularly standard 405(c) and all accompanying interpretations, as well as with the implementation of those requirements set forth in this letter.  A copy of standard 405(c) is attached to this letter for reference.
>
> I am additionally renewing your administrative appointment as Director of Research and Writing. I want to sincerely thank you for your work as Director and look forward to your continued leadership of the program.  This is a decanal administrative appointment and is not part of the faculty review process.  The Dean will renew this appointment in 5-year increments unless there is good cause for an earlier review or as a result of mutual agreement.
>
> A change in structure or staffing of the law school's research and writing program will not equate with "for good cause" to terminate or not renew your contract since your contract as Clinical Professor is separate from your administrative appointment as Director of Research and Writing. Should your appointment as Director of Research and Writing end, you would still maintain your position as Clinical Professor. In that capacity, without the administrative workload as Director of Research and Writing, you would be expected to teach two courses each semester as per the normal teaching load of all faculty.  Those courses could be writing courses, IP courses or whatever teaching load you mutually agree upon with the Dean and Vice Dean for Academic Affairs at the time.

Dkt. #63-3, pp. 7-8.  Mr. Malkan accepted the appointment as Clinical Professor and the administrative appointment as Director of Research and Writing on November 16, 2006.  Dkt. #63-3, p.8.

On October 30, 2007, plaintiff signed a SUNY Buffalo Human Resources Appointment Data Sheet provided to him pursuant to UB President John B. Simpson's appointment letter which provided plaintiff a term appointment to the rank of Clinical Professor, effective September 6, 2007 through August 31, 2009.  Dkt. #56-16 & Dkt. #63-8, ¶¶ 29-30.

Makau Mutua was appointed Interim Dean of the Law School in December of 2007.  Dkt. #63-8, ¶ 40.  Effective March 13, 2008, Dean Mutua relieved Mr. Malkan of his duties as Director of the Research and Writing Program.  Dkt. #56-21, p.4.  By letter dated August 28, 2008, Dean Mutua advised Mr. Malkan as follows:

> In accordance with the Policies of the Board of Trustees, I regret to inform you that your three-year term appointment as Clinical Professor ending on August 31, 2009 in the Law School will not be renewed.  As such, your last day of work will be May 15, 2009. . . .
>
> As you know, the Law School has terminated the Research and Writing Program such as it was and under which you were hired as Director and Clinical Professor and is replacing it with the Skills Program to be headed by a tenured faculty member.  The position of Director of Research and Writing does not now exist. . . .
>
> I have carefully reviewed the October 19, 2006 letter of appointment issued to you by former Dean Nils R. Olsen.  The letter states that it was written to comport with ABA rules and notes that you could only be terminated as Clinical Professor "for cause only" or "for good cause."  The official interpretation of ABA Rule 405 states that a clinical professor "may be terminated only for good cause, including termination or material modification of the entire clinical program." The termination of the Research and Writing Program and its replacement by the Skills Program meet the requirements of this rule.

>In addition, I note that Dean Olsen described your appointment as a "five-year contract." Such a five-year appointment is not permitted under SUNY Board of Trustees Policies.
>
>* * *

Dkt. #63-2, p.67. Mr. Malkan continued to teach at the Law School through the Spring Semester of 2009. Dkt. #63-8, ¶ 41.

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that defendant Mutua deprived plaintiff of his property interest in a "405(c)-qualified, presumptively renewable contract and university title/rank of full clinical professor" without due process, *to wit*, review by the Committee on Clinical Promotion and Renewal ("CCPR"). Dkt. #1.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Due Process Claim**

Defendant argues that plaintiff did not possess a property interest in his continued employment because the terms and conditions set forth in his employment agreement violated SUNY policy prohibiting term appointments longer than three years

and prohibiting any expectation of any other appointment or renewal.  Dkt. #54-15, pp.8-16; Dkt. #57, pp.4-5 & Dkt. #69, p.2.

Plaintiff responds that his agreement with Dean Olsen afforded him a protected property interest in his position as Clinical Professor as required by ABA Standard 405(c).  Dkt. #61, pp.4-10.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his constitutional rights.  *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011); *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."), *cert. denied*, 512 U.S. 1240 (1994).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . "  U.S. CONST. amend. XIV.  To prevail on a Fourteenth Amendment Due Process claim pursuant to 42 U.S.C. § 1983, the plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process.  *McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001). "The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."  *Narumanchi v. Board of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).

"Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*; *See Baden v. Koch*, 638 F.2d 486, 489 (2d Cir. 1980) ("property right must come from either state law or, in its absence, from mutual understandings of the parties.").

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

As set forth in New York's Compilation of Codes, Rules and Regulations, SUNY Policies of the Board of Trustees provide that "a *term appointment* shall be an appointment for a specified period of not more than three years, which shall automatically expire at the end of that period unless terminated earlier because of resignation, retirement or termination." 8 N.Y.C.R.R. § 335.10; See 8 N.Y.C.R.R. § 338.2 ("The services of academic and professional employees having term appointments shall cease automatically at the end of their specified terms."). Furthermore, "[n]o term appointment, of itself, shall be deemed to create any manner of legal right, interest or expectancy in any other appointment or renewal." 8 N.Y.C.R.R. § 335.10.

Plaintiff argues that "of itself" suggests that other agreements can create an "Expectancy Interest" in an appointment or renewal. Dkt. #61, p.31. However, "[i]t is

universally agreed that the mere expectancy of tenure or renewed employment does not give rise to a property interest protected by the U.S. Constitution." *Gotlob v. Beyard*, 837 F. Supp.26, 28 (D. Conn. 1993).  Thus, whatever the intent of the agreement between Dean Olsen and Mr. Malkan, the Court cannot permit the parties to circumvent the rules and regulations applicable to term appointments in an attempt to afford plaintiff the protected property interest of a continuing appointment under the label of a term appointment.  In other words, plaintiff can have no protected property interest in continued employment beyond that which is provided for term appointments by New York's Codes, Rules and Regulations. S*ee Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987) ("controlling state law created a 'legitimate claim of entitlement' only during the seven-year term of appointment" set forth in New York's Workers' Compensation Law); *Chu v. Schweiker*, 690 F.2d 330, 334 (2d Cir. 1982) (agreement cannot create property interest where the statute provides that commission could be terminated at any time); *Baden*, 638 F.2d at 492 (collecting cases holding "that mutual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes). Since plaintiff remained employed for the duration of the term of his appointment, it is recommended that defendant's motion for summary judgment be granted.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (Dkt. #55), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis

for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**	**Buffalo, New York**
	**December 1, 2015**

_s/ H. Kenneth Schroeder, Jr._
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**