UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEFFREY MALKAN,

        Plaintiff,

  -against-                                      Docket. No.: 12-CV-0236(A)

MAKAU W. MUTUA,

        Defendant.

-------------------------------------------------------X


**LEEDS BROWN LAW, P.C.'s MEMORANDUM OF LAW IN
REPLY TO DEFENDANT'S OPPOSITION TO THE FIRM'S OBJECTIONS
TO THE MAGISTRATE'S REPORT, RECOMMENDATION AND ORDER
REGARDING SANCTIONS**


                                                        Rick Ostrove, Esq.
                                                        LEEDS BROWN LAW, P.C.
                                                        One Old Country Road, Suite 347
                                                        Carle Place, New York 11514
                                                        (516) 873-9550

TABLE OF CONTENTS

Page

I. DISPUTED STANDARD OF REVIEW ................................................................... 1

II. THE FIRM DID NOT WAIVE ARGUMENTS ......................................................... 1

III. MISCHARACTERIZATION OF THE FIRM'S ARGUMENTS ................................ 2

IV. MALKAN'S STATEMENTS AGAINST MUTUA ARE IRRELEVANT .................. 4

V. THE VOTE WAS MATERIAL.................................................................................. 6

VI. DEFENDANT FAILED TO COMPLY WITH THE SAFE HARBOR
REQUIREMENT ........................................................................................................ 9

**I.     DISPUTED STANDARD OF REVIEW**

The parties dispute the standard of review to be applied. Defendant argues the "clearly erroneous" standard of review applies. In Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010), the Second Circuit declined to decide which standard of review was correct, despite the fact courts in this district are divided on the issue.[1] Compare Rates Tech. Inc v. Mediatrix Telecom, Inc., 2007 U.S. Dist. LEXIS 48237, *4 (E.D.N.Y. 2007) (applying *de novo* review), with McAllan v. Von Essen, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (applying clearly erroneous standard). This Court should apply *de novo* review out of "an abundance of caution," as done in Kriss v. BayRock Grp., LLC, 2015 U.S. Dist. LEXIS 151801 *5 (S.D.N.Y. 2015).

**II.    THE FIRM DID NOT WAIVE ARGUMENTS**

Defendant argues the Firm and Malkan waived any arguments relating to the Court's inherent power and 28 U.S.C. § 1927. However, the Firm's argument has always been that it should not be sanctioned because its conduct was not frivolous and it acted in good faith. (Dkt. 89, generally). The Firm's arguments regarding the inappropriateness of sanctions apply equally to the Court's inherent power and 28 U.S.C. § 1927. As these arguments were properly before the court and relate to all three theories upon which sanctions could be imposed, waiver does not apply. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.");

---

[1] There is also a circuit split regarding whether Rule 11 sanctions are dispositive or non-dispositive, and thus which standard of review might apply. Compare Alpern v. Lieb, 38 F.3d 933, 936 (7th Cir. 1994) (dispositive), with Maisonville v. F2 America, Inc., 902 F.2d 746, 748 (9th Cir. 1990) (nondispositive). See also Lancellotti v. Fay, 909 F.2d 15, 17 n.2 (1st Cir. 1991) (avoiding "vexing" question of whether Rule 11 sanctions are properly characterized as dispositive or nondispositive).

Kimes v. Stone, 84 F.3d 1121, 1126 (9th Cir. 1996) (holding where an issue is purely legal, and the other party would not be prejudiced, the court can consider an issue not previously raised); Engquist v. Or. Dep't of Agric., 478 F.3d 985, FN 5 (9th Cir. 2007) ("[Plaintiff] also argues that some particular arguments were waived because they were not raised below. Even assuming such waiver, however, we will consider them because these arguments are intertwined with the validity of the claim"); In re Udell, 18 F.3d 403, 406 (7th Cir. 1994) ("… at one time or another, the substance of all of [appellant's] present arguments were subsumed in the presentation to the district court."). In sum, the substance of our arguments were before the court, and therefore no waiver has occurred.

Additionally, Defendant explicitly argued to the Magistrate that the Firm waived its right to advance arguments regarding 28 U.S.C. § 1927. (Dkt. 93, p. 10). The Magistrate implicitly found no such waver, as the Magistrate addressed the merits of the Firm's arguments. Similarly, the Magistrate ruled on the merits of the inherent power sanctions. Thus, the Magistrate did not believe waiver applied, likely because the general substance of our arguments were before the Magistrate.

### III. MISCHARACTERIZATIONS OF THE FIRM'S ARGUMENTS

Defendant takes issue with "frivolous" being defined as the same order of magnitude as "less than a scintilla." This is a dictionary definition that is used by courts. (See, Dkt. 98-1, p. 2-3). Defendant argues for a higher standard – "a Rule 11 motion is frivolous if, at the time the request was signed a competent attorney would have concluded that it was destined to fail." (Dkt. 106, p. 11). Plaintiff's Sanctions Motion was not frivolous under either definition.

Defendant continues to use the straw man logical fallacy, by recasting our argument and attacking the mischaracterization. To be crystal clear, the Firm's actual argument is that (a) it is not frivolous to argue that Mutua lied, and (b) it is not frivolous to argue that Sleight objectively "knew"

that Mutua lied. (Dkt. 98-1, generally).  To support those positions, the Firm advanced the non-frivolous argument that *considering the totality of the circumstances*, a reasonable person would believe that Mutua lied.  Our evidence is detailed in our Memorandum in Support of our Objections – we refer the Court thereto.  (Dkt. 98-1, pp. 2-22).  We highlight one point below.

There were 19 witnesses to the vote – none support Mutua's version.  Many contradict it and present contemporaneous evidence of same.  When presented with such overwhelming evidence, Mutua should have readily acknowledged that he may have misremembered.  Mutua has had multiple opportunities to acknowledge that he may be misremembering.  He refuses to do so.  The explanation for this odd behavior is obvious – he knows he was lying and is sticking to his story.  This point is highlighted by Randy Oppenheimer, who wrote:

> Mutua continues to insist that his recollection of the April 28, 2006, meeting is correct, even after four faculty members in their depositions in this litigation have contradicted his version of events. On December 19, 2013, he categorically maintained under oath that there was no vote on Malkan's promotion to Clinical Professor and that the only vote that took place was on whether Malkan should be allowed to continue for an additional year as Director of Research and Writing. Mutua testified: "I remember this very clearly." **(Exhibit I:** Mutua Dep. 43). To date, no one else who was present at the meeting remembers what Mutua claims to remember "very clearly."

(Dkt 59-2, pp. 4-5).  In sum, based on the totality of the circumstances (Dkt. 98-1, pp. 2-22), including but not limited to, Mutua's refusal to acknowledge the possibility that he misremembered, it was not frivolous to argue that Mutua intentionally lied.  The Magistrate did not address the totality of the circumstances.  In fact, the R&R's "Discussion and Analysis" Section,[2] does not even mention Mutua's insistence that he is correct.  The Magistrate was incorrect in finding that there was

3

"no evidence before the Court to suggest anything other than differing recollections." (R&R, p. 25). There is such evidence, certainly enough to render the argument non-frivolous.

In reference to the syllogism, Defendant says that "Judge Schroeder does not conclude that 'Y' must be a product of faulty memory and no one can reasonably argue otherwise." (Dkt, 106, p.14). That is exactly what Judge Schroeder had to find *to sanction the Firm*. The only way to sanction the Firm (for arguing that Mutua committed perjury) is to find that such argument is frivolous. To find frivolity, the Magistrate had to conclude that, based on the evidence, the Firm could not reasonably argue that Mutua lied. The Court explicitly made that finding: "there is no evidence before the Court to suggest anything other than differing recollections." (R&R, p. 25; *See also*, p. 34). This finding is wrong -- there is evidence to suggest something other than differing recollections, certainly enough that it is not frivolous to argue that this was an intentional lie.

Further, the syllogism does not address Plaintiff's true argument, but was designed to counter the R&R's assumption that Plaintiff's argument was limited to "eight witnesses say one thing; Mutua says another." Plaintiff's true argument is not so limited, but instead considers the totality of the circumstances. In sum, it was not frivolous for the Firm to argue that Mutua intentionally lied.

## IV.   MALKAN'S STATEMENTS AGAINST MUTUA ARE IRRELEVANT

Defendant highlights Malkan's public statements about Mutua. Defendant argues that the Firm's knowledge of Malkan's statements means the Firm filed the sanctions motion to help "fulfill Mr. Malkan's misguided personal vendetta against them." (Dkt. 106, p. 13). This is nonsense.

---

[2] Defendant argues the Magistrate issued "an extensive 39 page R&R carefully addressing these issues." (Dkt 106, p. 3). However, the majority of the decision is a recounting of *some* of the facts, and legal citation. The "Discussion and Analysis" section contains no analysis on whether the lie was intentional; it merely concludes in one sentence that there is no basis for the accusation of perjury. (R&R, p. 25).

4

First, Malkan repeatedly states that his primary motive is that the Dean of a public law school lied in two judicial proceedings and the federal Court should intervene. The Magistrate found that it could "fathom no reason to fixate" on this issue other than to harass Mutua. However, protecting the integrity of the judicial system is a legitimate reason, as is bringing such conduct to the Court's attention for the Court to determine whether something should be done to address the matter.

Second, even if Malkan has multiple motives to pursue his Sanctions Motion, there is no evidence that the motion was filed as a means of harassment. Rico v. Leftridge-Byrd, 340 F.3d 178 (3d Cir. 2003) ("an action partially motivated by an improper purpose is nonetheless valid if the alleged offender would have taken the same action in the absence of the improper motive").

Third, regardless of Malkan's personal motives, the Firm thoroughly analyzed whether there was a legitimate basis for the Sanctions Motion, and filed it only after the Firm determined that the Sanctions Motion was not frivolous. (Dkt. 90, ¶¶ 11-13, 17, 29-31).

Further, given that Mutua was the Dean of a law school, the Firm felt the matter should be placed before the Court for judicial review. (Dkt. 90, ¶ 30).[3] The Firm's decision to proceed should not be judged by the fact that Malkan may have been partially motivated by his emotional reaction to Mutua's conduct (which is understandable). Rather, the Firm's conduct should be judged by whether the Firm advanced frivolous arguments, which it did not.

Finally, Malkan's other conduct is unrelated to the Firm. If the Court needs to know what the Firm advised Malkan about such conduct, the Firm will testify before the Court regarding same. The

---

[3] Defendant admits that if the Firm agreed to withdraw the Sanctions Motion, Defendant would have withdrawn the Counter-Motion. (Dkt. 106, p. 3). That would have been the easier course for the Firm. But, the Firm did not want prejudice Malkan by leaving the Court with the misimpression that the Firm did not believe in the merits of the motion, especially since the Firm believed that the motion was meritorious and worthy of judicial review. (Dkt. 90 ¶ 30).

Firm continues its efforts to maintain the confidentiality of privileged communications. Regardless, even if the Firm wanted to stop Malkan from publishing information, there is no mechanism for the Firm to do so. Thus, none of Malkan's personal conduct or motives should be attributed to the Firm.

## V.   THE VOTE WAS MATERIAL

First, Defendant claims "the outcome of that vote is undisputed to have been non-binding and merely advisory to then Dean Nils Olsen." (Dkt. 106, p. 3). However, the *outcome* of the vote is only one issue. Another is whether the vote occurred at all. Mutua testified at PERB, "as far as I was concerned, Jeff never had a clinical appointment," and further testified:

> Q:   So as far as you knew, after the meeting he wasn't going to be promoted because nobody had voted on it?
>
> A:   That's correct.
>
> Q:   And it had to be voted on by the committee?
>
> A:   It had to be voted on by the committee.

(Dkt. 98-2, Ex. 9). The implication is that if there was no vote and thus no advisory opinion provided by the CCRP, Malkan never received tenure and had no property interest in his position as a tenured professor. Even though the vote was advisory in nature, the vote still had to occur so that the CCRP could give its input to the Dean. Whether this is legally correct, it appears to be Mutua's argument, which is relevant to whether Malkan had a property interest. With that argument, the legitimacy of whether Dean Olsen improperly conferred a property interest upon Malkan (without ever receiving an advisory vote) is in play. Thus, whether the vote occurred is relevant and material.

Second, we argued that Malkan's loss at PERB, coupled with his losses at the Court of Claims, will be used by defense counsel to undercut Malkan's credibility. (Dkt. 98-1, p. 13 and FN

4, containing mock closing argument). Defendant does not dispute he would likely use those facts to his advantage at trial. He instead argues that the PERB proceeding did not hinge on the facts relating to the vote. However, the hearing officer thought the vote important enough to devote a lengthy paragraph to it, citing Mutua's testimony and concluding that "the faculty did not vote on Malkan's faculty appointment." (Dkt. 70, Ex. L at pp. 2-3). Moreover, the PERB decision relied heavily on Mutua's testimony (Dkt. 70, Ex. L, generally), and described it as credible in at least two instances. (Dkt. 70, Ex. L at pp. 21 and 22). Even if Mutua's testimony did not change the hearing officer's opinion, the hearing officer cited it, believed it, and therefore must have disbelieved Malkan's contrary contention. It is difficult to assess whether these credibility determinations affected the outcome at PERB. But, there is little doubt this would be used against Malkan at trial.

Third, regarding our contention that the vote is material background information, Defendant does not address that this Court found the vote relevant enough to include in its motion to dismiss order. Defendant counters this by arguing that "background information does not meet the threshold for materiality." (Dkt. 106, p. 16). Defendant cites no authority for this proposition, and falsely claims we cited no authority to the contrary. Our brief addressed this issue at pp. 12-13 (Dkt. 98-1), and Defendant makes no attempt to distinguish the cases cited therein.[4]

Fourth, Defendant argues that whether Mutua lied about the vote is immaterial to his likeability and punitive damages. (Dkt. 106, pp. 16-17). Defendant cannot seriously contend that whether Mutua lied about the vote does not bear on his credibility. United States v. Myton, 2005 U.S. Dist. LEXIS 11456, *14 (E.D.N.Y. 2005) ("even when it involves a collateral issue, perjury

---

[4] See also, e.g., People v. Currus, 266 A.D.2d 468 (2d Dep't 1999)(testimony "relevant and material as background information which explained the sequence of event"); People v. Genao, 184 A.D.2d 285 (1st Dep't)(court "properly admitted brief police testimony…to complete a coherent narrative").

7

bears upon the witness's credibility"). Moreover, Defendant cannot articulate how the lie is immaterial to punitive damages, which is important since this Court found that the extent to which Mutua would go to remove Malkan is relevant to punitive damages. (Dkt. 98-1, p. 14).

Fifth, the Firm argued that the vote is relevant to the underlying policies and unwritten common laws applicable to faculty appointment. Defendant does not dispute the logic set forth in our Memorandum Supporting our Objections (Dkt. 98-1) at page 13-14, citing this Court's motion to dismiss decision and explaining the relevance.

Sixth, Defendant attacks our argument that Ewing and Oppenheimer also believed the vote was material, alleging the motion was filed to settle the case. (Dkt. 106, p. 17). In addition to being raised for the first time now, this is blatant speculation which this Court should disregard. The Firm has never before heard this suggestion. The Firm never discussed, proposed, or made such agreement and has no knowledge of same. Even if Malkan and Ewing had such an agreement, without the knowledge of their attorneys, Mr. Oppenheimer would not have filed the motion unless he believed it had merit and his motion only has merit if the issue of the vote was relevant.

Seventh, Defendant argues the fact Sleight extensively deposed Malkan regarding the vote does not show that it was material, since depositions cover immaterial matters. However, the depth in which Sleight explored the vote exceeds that of generalized questioning. Sleight devoted 17% of the deposition to exploration of this topic, asked three other witnesses about the vote (Dkt. 98-1, p. 16), and discussed it in his 56.1 Statement of Material facts.

Finally, Defendant's citation to On Time Aviation, Inc. v. Bombardier Capital Inc., 570 F. Supp. 2d 328 (D. Conn. 2008) is inapposite. In On Time, the defendant moved for summary judgment. Plaintiff opposed, then filed a sanctions motion which "merely recast [the] opposition

arguments into a Rule 11-esque form." Id. at 332. The court granted the defendant's cross-motion for sanctions, holding that plaintiff's counsel's strong conviction that her summary judgment arguments were correct did not excuse the unreasonableness of duplicative filings, since "sanctions decisions are not a judgment on the merits of an action." Id. at 331-332. Here, we have a totally different situation -- the Sanctions Motion is not merely a reframing of the summary judgment motion. Thus, On Time is inapplicable.

## VI. DEFENDANT FAILED TO COMPLY WITH THE SAFE HARBOR REQUIREMENT

Defendant raises the new argument[5] that he was not obligated to provide safe harbor, citing Safe-Strap Co. v. Koala Corp. In Safe-Strap, after the plaintiff served the complaint, the defendant filed a Rule 11 motion, arguing the lawsuit was frivolous. The plaintiff did not file a counter-motion, but argued in its opposition brief that the accusations of misconduct warranted sanctions. The court denied the Rule 11 motion, stating "in effect, defendant hopes to secure summary judgment in the guise of sanctions." Id. at 414. The court noted that a prevailing party defending against a Rule 11 motion need not comply with the safe harbor requirement to be awarded fees, but deferred resolution of the issue until the end of the litigation, since it was premature to rule on whether the plaintiff was a prevailing party and whether sanctions were warranted. Id. at 421-22.

Safe-Strap cannot insulate Defendant from his duty to provide safe harbor. First, unlike the plaintiff in Safe-Strap, Defendant here made a counter-motion seeking sanctions. Second, the court recommended sanctions based on the arguments in the counter-motion. Further, here, unlike Safe-Strap, prior to filing the counter-motion, Defendant provided a safe harbor letter. The safe harbor warning raised specific arguments outlined in the safe harbor letter, which incorporated by reference

---

[5] Defendant has not identified this as a new argument in violation of Loc. R. Civ. P. 72(c).

the notice of motion and March 12 and June 3 letters. Our contention, which is indisputable, is that those documents to which we were explicitly referred (notice of motion, March 12 and June 3 letters) did not address many issues which were later raised in counter-motion and we did not have warning that those issues would be part of the counter-motion. (Dkt. 89, pp. 1-4; Dkt. 90, ¶¶ 9-21, 56-60).

While Defendant argues that his other arguments were advanced in Defendant's opposition to the Sanctions Motion, the safe-harbor letter did not direct us to that brief and instead directed us to other documents. Thus, Defendant told us to look at certain documents to assess his warning, which we did. We were not directed to other documents, and had no independent reason to look at other documents. (Dkt. 90, ¶¶ 23-26). Thus, the Firm did not have advance notice of some of Defendant's arguments, and should not be sanctioned under Rule 11 in relation to those arguments.

Thus, the Firm did not have advance warning of Defendant's arguments about citation errors. Such errors and the R&R's mention of Oliveri do not prove the Firm acted in bad faith. Whereas the Oliveri error is admittedly embarrassing, it was not made bad faith and would have been withdrawn if that point was in Defendant's safe harbor warning. The case law supports the Firm's argument that a finding of bad faith requires more than frivolousness, and thus it was error for the R&R to hold that bad faith rested on the same factors which established frivolousness. Cons. Edison Co. v. Realty Inv. Assoc., L.P., 524 F. Supp. 150, 153 (S.D.N.Y. 1981) (where action is objectively frivolous, there is no additional bad faith requirement for fee award, since "the latter, more difficult, standard would render [the fee award statute] meaningless, adding nothing to the common law rule authorizing an assessment of attorneys' fees against a party that has proceeded in bad faith). The Firm has already addressed all of Defendant's bad faith arguments, which are subsumed in the above arguments, as well as our objection brief. (Dkt. 98-1, pp. 23-25).

Dated: Carle Place, New York
       February 10, 2016

                                      Respectfully submitted,

                                      LEEDS BROWN LAW, P.C.
                                      Attorneys for Plaintiff
                                      One Old Country Road, Suite 347
                                      Carle Place, New York 11514
                                      (516) 873-9550

                                      By:_____/s/_____
                                            RICK OSTROVE